# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# GREAT FALLS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>BRIAN DOUGLAS EAGLE,<br><br>Defendant. | CR 18-41-GF-BMM<br><br>**MEMORANDUM<br>AND ORDER** |

## INTRODUCTION

Defendant Brian Eagle (Eagle) is charged by Indictment with one count of abusive sexual contact in violation of 18 U.S.C. §§ 1153(a) and 2244(a)(1). The charge arises from an incident that allegedly occurred on the Fort Peck Indian Reservation on or about February 7, 2018. The Government alleges that Eagle engaged in sexual contact with a juvenile female identified as O.M. while O.M. was taking a shower in her home. Tribal law enforcement officers arrested Eagle shortly after the incident. Eagle was placed in tribal custody.

FBI special agent Dave Burns and Tribal Criminal Investigator Sean Red Boy interviewed Eagle on February 8, 2018, and on May 3, 2018, at the Fort Peck Tribal Adult Detention Center in Popular, Montana. Both interviews were recorded. A CD recording of the February 8, 2018, interview has been filed as

Exhibit 501.  A CD recording of the May 3, 2018, interview has been filed as Exhibit 502.

Eagle has moved to suppress all of the statements that he made during the interviews as well as "all evidence derived" from the interviews.  (Doc. 16 at 8).  The Government opposes the motion.

The Court conducted a hearing on the motion on August 16, 2018.  The Government presented testimony from Agent Burns.  The parties submitted supplemental briefs on August 17, 2018.  (Docs. 33, 34).

## BACKGROUND

The Court makes the following factual findings based on the exhibits in the record and the testimony presented at the suppression hearing.

### a.    Interview on February 8, 2018

Agent Burns began the interview process on February 8, 2018, by presenting Eagle with a *Miranda* "Advice of Rights" form.  (Doc. 16-1).  Agent Burns asked Eagle if he was able to read the Advice of Rights form.  Eagle responded that he could.  Eagle read the Advice of Rights form aloud.  Agent Burns asked Eagle if the Advice of Rights form made sense to him.  Eagle responded that it did.  The Advice of Rights form stated as follows:

> "You have the right to remain silent.
>
> Anything you say can be used against you in court.

> You have the right to talk to a lawyer for advice before we ask you any questions.
>
> You have the right to have a lawyer with you during the questioning.
>
> If you cannot afford a lawyer, one will be appointed for you before any questioning if you wish.
>
> If you decide to answer questions now without a lawyer present, you have the right to stop answering questions at any time."

(Doc. 16-1).

Agent Burns asked Eagle to sign the *Miranda* waiver portion of the form if he understood his rights and wanted to talk to him. (Doc. 22 at 5). Eagle immediately inquired as to how he could obtain a lawyer. Eagle asked:

> "Hey, what do I have to do to get a lawyer cause I want to go to court and fuckin' get this all settled?"

Agent Burns responded that an attorney could not be appointed for him until he had been charged with a federal offense and appeared before a federal judge. Agent Burns told Eagle that the only charge against him, at that juncture, was a tribal charge. CI Red Boy then told Eagle that he would get a tribal attorney or a tribal advocate at his initial appearance on the tribal charge. Eagle signed the *Miranda* waiver form.

The interview, including the preliminary matters discussed above, lasted

approximately 38 minutes. Eagle answered a number of questions presented by Agent Burns. Eagle also provided a saliva sample. Eagle denied having any sexual contact with O.M.

  b. **<u>Interview on May 3, 2018</u>**

Agent Burns interviewed Eagle again on May 3, 2018. Agent Burns began the interview process by telling Eagle that he had completed his investigation into the matter involving O.M. Eagle responded with the following question to Agent Burns:

> "Is what's his name supposed to be here . . . that guy that's supposed to be working on my case?"

Agent Burns replied that no federal charges had been filed. Agent Burns told Eagle that the only pending charge was a tribal charge. Agent Burns then asked Eagle to read the *Miranda* Advice of Rights form aloud. Eagle complied.

Agent Burns reminded Eagle that he possessed the discretion to talk to him or refuse to talk to him. Agent Burns informed Eagle that he would leave if Eagle did not want to talk. Eagle signed the *Miranda* waiver.

Eagle made a number of incriminating statements during the interview. Eagle admitted, among other things, that he had engaged in sexual contact with O.M. while she was taking a shower.

**DISCUSSION**

Eagle argues that the law requires the Court to suppress his statements for the following two reasons: 1) his unequivocal request for counsel before the February 8, 2018, interview required Agent Burns to stop trying to interview him until an attorney had been appointed; and 2) the *Miranda* waivers that he executed before both interviews began were neither knowing nor intelligent. (Doc. 29 at 3-4; Doc. 33 at 5). Eagle argues that his *Miranda* waivers were neither knowing nor intelligent because Agent Burns provided inaccurate information regarding the "procedure for obtaining counsel in the District of Montana." (Doc. 33 at 2). Eagle argues that procedure described by Agent Burns did not comply with the procedure described in § VIII(A)(1) of this Court's Criminal Justice Plan Act. (Doc. 16 at 5-6; Doc. 29 at 5; Doc. 33 at 2).

**Miranda Waivers**

Law enforcement officers must inform a suspect of the right to consult with an attorney and to have an attorney present during questioning before officers can commence a custodial interrogation. *Davis v. United States*, 512 U.S. 452, 457 (1994). The accused must waive this right to an attorney in a voluntary, knowing, and intelligent manner. *Miranda v. Arizona*, 384 U.S. 436, 444, 464-65 (1966). The Government bears the burden to show that the defendant knowingly and intelligently waived his *Miranda* right to appointed counsel. *Id.* at 469-475.

When a suspect makes an ambiguous request for counsel in response to a *Miranda* warning, however, the interrogating officers must clarify whether the suspect wants an attorney present during questioning. *United States v. Rodriguez*, 518 F.3d 1072, 1077 (9th Cir. 2008). If clarification reveals that the suspect wants counsel present during questioning, the interrogation must stop. *United States v. Fouche*, 776 F.2d 1398, 1405 (9th Cir. 1985). The interrogation may continue, however, if clarification reveals that the suspect does not want counsel present during questioning. *Id.*

If the interrogating officers fail to clarify the suspect's ambiguous or equivocal request for counsel, a court must suppress the suspect's statements. *Rodriguez*, 518 F.3d at 1080-81. The Ninth Circuit in *Rodriguez* determined that the district court improperly had admitted the defendant's ambiguous statements following his response to the *Miranda* warning. The officers had provided the defendant with *Miranda* warnings and asked him whether he wished to speak to the officers. The defendant replied, "no, I'm good for tonight." *Id.* at 1078.

The Ninth Circuit rejected the defendant's claim that the response constituted an unambiguous assertion of his right to remain silent. The Ninth Circuit instead deemed the statement "to be, at best, an ambiguous invocation of the right to silence." *Id.* This ambiguous statement nevertheless necessitated the interrogating officers to clarify the defendant's intent. *Id.* at 1079. The

interrogating officers failed to clarify the defendant's wishes regarding counsel and proceeded to question him. *See also*, *United States v. Reyes-Laguna*, 2009 WL 1396359 *3-5 (S.D. Cal. 2009); *United States v. Fry*, 2009 WL 1687958 *7-15 (D. Idaho 2009).

The Ninth Circuit in *Rodriguez* distinguished the timing of the defendant's ambiguous assertion of his preference. A defendant's clear statement of understanding of the *Miranda* warnings, including the right to counsel, allows the officers to commence the interrogation. A defendant's later ambiguous statement about the availability of counsel after the interrogation has commenced need not necessarily require the officers to seek clarification. *See Davis*, 512 U.S. at 461. The Supreme Court in *Davis* expressly rejected a clarification rule on the facts of the case before it when the defendant orally expressed understanding of *Miranda* warnings, signed the *Miranda* waiver, and began to answer questions. Only after having answered questions and sensing the interrogation was not going well did the defendant volunteer that "[m]aybe I should talk to a lawyer." *Id.* The Supreme Court rejected as inadequate "an ambiguous or equivocal reference to an attorney" after having signed the *Miranda* warnings and answered questions for several hours. *Id.*

The Ninth Circuit in *Rodriguez* distinguished *Davis* on "the facts, holding, and reasoning." *Rodriguez*, 518 F.3d at 1077-78. The defendant in *Davis* had

expressed understanding of the *Miranda* warning orally and in writing at the time that the officers provided the warning. The Supreme Court focused its analysis on whether the defendant's ambiguous statement regarding counsel after several hours of interrogation should have precluded further questioning. *Davis*, 512 U.S. at 461. Under those circumstances, the Supreme Court determined that a defendant must provide a "clear statement" invoking his right to counsel in order to suspend the interrogation. *Id.*

The Ninth Circuit characterized the "clear statement" rule of *Davis* as addressing only the scope of invocations of *Miranda* rights in a post-waiver context. *Rodriguez*, 518 F.3d at 1079. The defendant in *Rodriguez* offered his "I'm good" response at the time of the *Miranda* warnings. Under such circumstances and absent having previously obtained an unambiguous and unequivocal Miranda waiver, "a duty rests with the interrogating officer to clarify any ambiguity before beginning general interrogation." *Id.* at 1080.

Here, Eagle asked Agent Burns about obtaining counsel in response to the *Miranda* warning provided on February 8, 2018. Eagle asked: "Hey, what do I have to do to get a lawyer cause I want to go to court and fuckin' get this all settled?" The Court finds that Eagles's inquiry, at the very least, qualifies as an ambiguous request by Eagle for assistance of counsel during the interrogation. Faced with that ambiguous request for counsel, Agent Burns possessed an

affirmative duty to clarify that ambiguity before he proceeded with the interrogation. Agent Burns failed to clarify Eagle's wishes during both the February 8, 2018, interview and the May 3, 2018, interview. Agent Burns's failure to clarify the ambiguity tainted both interviews.

The Government cannot satisfy its burden to show that Eagle knowingly and intelligently waived his *Miranda* right to have counsel present during his interviews. *Rodriguez*, 518 F.3d at 1080-81. Eagle's statements during the February 8, 2018, interview and the May 3, 2018, interview as well as any evidence derived from those interviews, must be suppressed.

The Court's determination that Eagle's ambiguous request for counsel before the first interview requires suppression of his subsequent statements negates the need to address Eagle's ambiguous statement about his tribal advocate before the second interview. It also eliminates the need to address whether the Court's Criminal Justice Act Plan imposed a duty on the investigating officers to contact Eagle's tribal advocate before the second interview.

Accordingly, IT IS ORDERED:

Defendant's Motion to Suppress (Doc. 15) is GRANTED.

DATED this 21st day of August, 2018.

Brian Morris
United States District Court Judge